IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| ERIN ANDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.: |
| | ) | |
| ACADEMY LTD. d/b/a ACADEMY SPORTS & OUTDOORS | ) ) ) | 5:15-CV-272-CAR |
| | ) | |
| Defendant. | ) | |
| | ) | |

**COMPLAINT**

Plaintiff ERIN ANDERSON brings this action to remedy unlawful employment practices by Defendant ACADEMY LTD. d/b/a ACADEMY SPORTS & OUTDOORS.

**Jurisdiction and Venue**

1. This is an action involving the violation of Plaintiff's federal statutory rights under the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq*. ("FMLA") and the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq*. ("FLSA").

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331. Subject-matter jurisdiction is also conferred upon this Court by 28 U.S.C. § 1337 because this action arises under Acts of Congress regulating commerce.

3. The unlawful employment practices alleged in this Complaint were committed within this District at Plaintiff's work location in Warner Robins, Georgia. Thus, in accordance with 28 U.S.C. § 1391 and M.D.G.A. Local Rule 3, venue is appropriate in this Court.

## The Parties

4. Plaintiff is a resident of Houston County, Georgia.

5. Plaintiff was an "employee" of Defendant within the meaning of 29 U.S.C. § 203(e) within the three years preceding the filing of this Complaint.

6. Defendant is a Texas corporation with a principal place of business at 1800 N. Mason Road, Katy, Texas 77449.  Defendant can be served via its registered agent, CT Corporation, at 1201 Peachtree Street, N.E., Atlanta, Georgia 30361.

7. Defendant is an employer in an industry affecting commerce and has had more than fifty employees within 75 miles of Plaintiff's work site for each working day during each of twenty or more calendar workweeks of Plaintiff's employment.  As such, Defendant is an "employer" within the meaning of the FMLA.

8. Defendant is an "employer" within the meaning of 29 U.S.C. § 203(d). At all times relevant to this action, Defendant has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA because it has had employees engaged in commerce and because its annual gross sales volume exceeds $500,000.

9. At all relevant times, Defendant has continuously done business in the State of Georgia.  Consequently, Defendant is subject to the jurisdiction of this Court.

10. Plaintiff consents to participate in this action.  Plaintiff's consent is attached hereto as Exhibit 1 and is a part hereof for all purposes pursuant to Fed. R. Civ. P. 10(c).

## FACTUAL ALLEGATIONS

11. Defendant hired Plaintiff in June 2012 as an Administrative Assistant at its store in Warner Robins, Georgia.

12. Plaintiff was a non-exempt employee within the meaning of the FLSA throughout her employment with Defendant and was subject to the overtime provisions of the FLSA.

13. On February 6, 2014, Plaintiff applied for leave under the FMLA due to the serious health condition of her son.

14. Defendant approved Plaintiff's request for FMLA leave, allowing her to take intermittent leave to care for her son's health condition. Plaintiff's Store Director, Thomas Stubbs, informed Plaintiff that whenever she needed to take leave for her son's health condition it would qualify as intermittent FMLA leave.

15. Throughout her employment, Plaintiff regularly worked hours in excess of 40 hours per workweek for which Defendant failed to compensate her properly.

16. For example, Plaintiff's supervisor, Mr. Stubbs, instructed Plaintiff to show up on days that she was not scheduled to work and perform hours of work without clocking in. He also instructed her to clock out and perform work off the clock. Mr. Stubbs further required Plaintiff pick up meals for him and run errands for Defendant, all while clocked out from work.

17. Plaintiff's supervisor was aware of the hours Plaintiff worked for which she was not properly compensated. In fact, Mr. Stubbs required Plaintiff to work off the clock so that her weekly hours did not regularly exceed forty in each workweek.

18. In addition to requiring Plaintiff to work off the clock, Mr. Stubbs also instructed Plaintiff to edit her time to ensure that her hours did not regularly exceed forty hours per workweek. As a result of these actions, Defendant failed to credit and pay Plaintiff properly for all overtime hours she worked – *i.e.*, all hours worked over 40 within each workweek – in violation of the FLSA.

19. Defendant has willfully and intentionally failed and/or refused to compensate Plaintiff in accordance with the FLSA.

20. In November 2014, one of Defendant's employees, Melissa Miller, was reprimanded for a violation of the company dress code. The employee blamed Plaintiff for her verbal reprimand and responded to the reprimand by complaining that Plaintiff also allegedly violated the dress code and that Plaintiff edited Plaintiff's time.

21. In response to this employee's complaint, on December 17, 2014, Mr. Stubbs and Zena Turner, a manager, held a meeting with Plaintiff in which Mr. Stubbs verbally warned Plaintiff that she could not edit her time. This statement shocked Plaintiff because it completely contradicted Mr. Stubbs' prior instructions. Plaintiff responded that Mr. Stubbs knew she edited her time because he instructed her to do so.

22. After the meeting, Plaintiff wrote an e-mail to Human Resources Generalist Shari King stating that Mr. Stubbs pulled her into a disciplinary meeting regarding time editing.

23. Ms. King responded to Plaintiff's e-mail and asked her to provide additional information about her concerns, and to answer a series of questions about the issues. To comply with Ms. King's request, Plaintiff sent a follow up e-mail on December 17, 2014 at 7:00 p.m. stating that in regards to editing her time, Mr. Stubbs instructed her "**not to go over 40 hours regardless of what I am doing for the store so if I forgot to clock out before 40 hours I edit my punch…**"

24. Plaintiff also explained to Ms. King that she did not previously complain about Mr. Stubbs' instructions to edit her time because she is a single mother who is the sole income earner for her family and she feared Stubbs would retaliate against her if she spoke up.

4

25. On December 22, 2014, Plaintiff sent a follow-up e-mail to Ms. King explaining additional concerns she had about working under Mr. Stubbs, including that:

- She has had to adjust her time when Mr. Stubbs required her to pick up meals for him. She paid for these meals out of her own pocket because "If I do not do what my store director wants it can be trouble for me and my source of income taking care of my son."

- She often worked off the clock on her days off, and her employer was aware of it: "There are quite a few times when I am off I have been known to come in and do things for work and not punching the clock but more so making sure things are getting done. This often takes place on Fridays…"

- Mr. Stubbs required her to come to work even when she was on intermittent FMLA leave due to her son's illness: "There was also a time in which I had leave work due to my son having an episode and still had to come and bring lunch on a Tuesday for a team lead meeting."

- She stayed silent on these issues because she was afraid of losing her job: "There are so many things happening in our store, but I stay silent because I do not want to lose my job not by me doing anything but due to [] retaliation."

26. On December 29, 2014, Ms. King and Plaintiff had a phone conversation in which Plaintiff reiterated her complaint that Mr. Stubbs requires her to work off the clock and edit her time down to prevent her from working more than 40 hours per week. Plaintiff also repeated that she complied with Mr. Stubbs' demands because she was a single mother scared of losing her job, and that she feared Mr. Stubbs would retaliate against her for raising these issues.

27. Ms. King assured Plaintiff that she would speak with Mr. Stubbs and that he would not retaliate against her.

28. Ms. King also instructed Plaintiff that she was no longer allowed to work off the clock or edit her time. She explained that if Mr. Stubbs asked Plaintiff to work off the clock again, then Plaintiff needed to immediately report the issue.

5

29. On January 8, 2015, Plaintiff e-mailed Ms. King to inform her that other employees were gossiping about the company's investigation about Plaintiff's time editing. Plaintiff was concerned that Mr. Stubbs was speaking with other employees about her confidential complaints to human resources.

30. On January 9, 2015, Mr. Stubbs drafted a document titled "Record of Discussion," which addressed purported concerns Mr. Stubbs had about Plaintiff's performance.

31. On January 13, 2015, Mr. Stubbs handed Plaintiff the "Record of Discussion" document and directed her to sign it.

32. On January 19, 2015, Plaintiff's son had a serious medical episode and did not have the medication that he needed. Plaintiff had the medication with her at work, and thus called her mother to come pick up the medication for her son.

33. Plaintiff asked Whitt Decker, a Store Manager, if she could use her cell phone to correspond with her mother and son about her son's medical care. Mr. Decker approved Plaintiff's request.

34. After receiving approval from Mr. Decker, Plaintiff used her cell phone to check her son's health condition.

35. On January 22, 2015, Plaintiff e-mailed Ms. King to inform her that Mr. Stubbs had once again instructed her to work off the clock. First, he demanded that Plaintiff take his personal cell phone to the mall to get fixed during business hours. Second, he instructed Plaintiff to go to a store on Saturday to purchase juice for a store meeting and not clock in to do so.

36. Plaintiff informed Ms. King that she felt as though she was walking on egg shells after her complaint to HR and felt Mr. Stubbs had her under a microscope, and she feared that Mr. Stubbs was looking for reasons to fire her.

37. Plaintiff also informed Ms. King that her son had health problems on Monday and that she had received permission from the manager on duty to use her cell phone to check on him.

38. On Saturday, January 24, 2015, Plaintiff's son's medical condition worsened. Plaintiff spoke with Mr. Stubbs and informed him that her son may be hospitalized for several days, and that she may need to miss a few days of work. Mr. Stubbs was exasperated by this news and asked Plaintiff whether she would still be able to pickup the juice for the team meeting that weekend. Plaintiff said that she could not leave her son. Mr. Stubbs became frustrated and said he was coming to her son's doctor's office to pick up the company credit card so that he could buy the juice.

39. Plaintiff took FMLA leave for her son's serious health condition from January 27-28, 2015.

40. When Plaintiff returned to work on January 28, 2015, Mr. Stubbs called her into a meeting and said that he was firing her for violation of the company's cell phone policy when she used her cell phone on January 19, 2015.

41. Plaintiff responded that she had permission from Mr. Decker, the Manager on Duty at the time, to use her cell phone, and she pleaded with Mr. Stubbs to ask Mr. Decker about this. Mr. Stubbs refused to check with Mr. Decker and said, "You're not going around me to get the answer you want," and fired Plaintiff.

## COUNT I

### FMLA INTERFERENCE

42. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 41 above.

43. Defendant was an employer in an industry affecting commerce and has had more than fifty employees within 75 miles of Plaintiff's work site for each working day during each of twenty or more calendar workweeks during Plaintiff's employment. As such, Defendant is and has been an "employer" within the meaning of the FMLA.

44. Plaintiff was employed in excess of twelve months by Defendant and worked in excess of 1250 hours annually. Also, Plaintiff was unable to work because of her son's serious health condition. Accordingly, she was entitled to the benefits and protections of the FMLA.

45. Defendant interfered with Plaintiff's right to FMLA leave when it terminated Plaintiff's employment.

46. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered past and future pecuniary losses, lost back and front pay, interest on pay, and other benefits. These damages have occurred in the past, are permanent, and are continuing. Plaintiff is also entitled to liquidated damages, attorneys' fees, and costs.

## COUNT II

### FMLA RETALIATION

47. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 41 above.

8

48. Defendant was an employer in an industry affecting commerce and has had more than fifty employees within 75 miles of Plaintiff's work site for each working day during each of twenty or more calendar workweeks during Plaintiff's employment. As such, Defendant is and has been an "employer" within the meaning of the FMLA.

49. Plaintiff was employed in excess of twelve months by Defendant and worked in excess of 1250 hours annually. Also, Plaintiff was unable to work because of her son's serious health condition. Accordingly, she was entitled to the benefits and protections of the FMLA.

50. Defendant retaliated against Plaintiff when it terminated her employment in retaliation for Plaintiff's attempt to exercise her rights under the FMLA.

51. As a direct and proximate result of Defendant's conduct described above, Plaintiff has suffered past and future pecuniary losses, lost back and front pay, interest on pay, and other benefits. These damages have occurred in the past, are permanent, and are continuing. Plaintiff is also entitled to liquidated damages, attorneys' fees, and costs.

## COUNT III

### FLSA - OVERTIME

52. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 41 above.

53. By engaging in the conduct described above, Defendant failed to pay Plaintiff at a rate of pay not less than one and one half times her regular rate for all work performed in excess of forty hours in a workweek, in violation of 29 U.S.C. § 207.

54. Specifically, Defendant failed to properly compensate Plaintiff for the hours she worked in excess of 40 hours per workweek.

55. Defendant's actions in failing to compensate Plaintiff in accordance with the FLSA were willful, within the meaning of 29 U.S.C. § 255(a), and committed with a conscious disregard for the rights of Plaintiff.

56. As a result of Defendant's violations of the FLSA, Plaintiff is entitled to recover her unpaid overtime compensation and an equal amount as liquidated damages as well as prejudgment interest, reasonable attorneys' fees, and costs of suit, pursuant to 29 U.S.C. § 216(b), all in amounts to be determined at trial.

## COUNT IV

## FLSA - RETALIATION

57. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 41 above.

58. This claim arises from Defendant's unlawful and willful retaliation against Plaintiff in violation of the FLSA.

59. Plaintiff engaged in protected activity pursuant to 29 U.S.C. § 215(a)(3) when she complained, on multiple occasions, about Defendant's violations of the FLSA.

60. Defendant retaliated against Plaintiff for her complaints by terminating her employment on January 28, 2015.

61. As a direct result of Defendant's retaliatory actions, Plaintiff suffered mental anguish, emotional distress, humiliation, and loss of pay and benefits.

62. Plaintiff is entitled to back and front pay, liquidated damages, compensatory damages including mental anguish, emotional distress, attorneys' fees, costs of suit, and all other damages available at law or in equity.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment against Defendant, awarding Plaintiff with respect to her FMLA claims:

    i. back and front pay;

    ii. interest on pay;

    iii. other benefits;

    iv. liquidated damages;

    v. attorneys' fees and costs incurred in this action; and

    vi. such other and further relief as is just and equitable;

With respect to her FLSA claim for overtime, Plaintiff respectfully prays this Court award her:

    i. damages in the amount of her unpaid overtime wages, according to proof, and pursuant to the FLSA;

    ii. an equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b);

    iii. prejudgment interest;

    iv. costs of suit, including expenses incurred herein, pursuant 29 U.S.C. § 216(b);

    v. reasonable attorneys' fees pursuant to 29 U.S.C. § 216(b); and

    vi. such other and further relief as this Court may deem just and proper.

With respect to her FLSA retaliation claim, Plaintiff respectfully prays this Court award her:

    i. back and front pay;

    ii. compensatory damages including those for mental anguish and emotional distress, and all other damages available at law or in equity;

    iii. costs of suit, including expenses incurred herein, pursuant 29 U.S.C. § 216(b);

    iv. reasonable attorneys' fees pursuant to 29 U.S.C. § 216(b); and

    v. such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

**Plaintiff hereby demands a jury trial on all claims for which she has a right to a jury.**

DATED: July 14, 2015, 2015

By    s/Jeffrey B. Sand
    Andrew L. Weiner
    Georgia Bar No. 808278
    aw@atlantaemployeelawyer.com
    Jeffrey B. Sand
    Georgia Bar No. 181568
    js@atlantaemployeelawyer.com
    THE WEINER LAW FIRM LLC
    3525 Piedmont Road
    7 Piedmont Center | 3rd Floor
    Atlanta, Georgia 30305
    (404) 254-0842 (Tel.)
    (404) 205-5029 (Tel.)
    (800) 866-1482 (Fax)

    Counsel for Plaintiff